## McMAHAN v. DAWKINS.

1. A legal and an equitable cause of action may be embraced in one complaint, but must be separately tried, each according to its distinctive mode.
2. In action by a judgment creditor in the Court of Equity to set aside a voluntary deed of his debtor, the action must fail unless the plaintiff show that he had exhausted his legal remedies, the highest and best evidence of which is a return of *nulla bona* on the execution.
3. But a purchaser at sheriff's sale of the judgment debtor's interest in a tract of land which this debtor had previously conveyed away, may bring action in the law courts for a recovery of the land, and there attack the defendant's deed for fraud, without proof that the judgment creditor had exhausted all other remedies.
4. Where an administrator, holding the senior judgment against one of the distributees, purchased the debtor's land at sheriff's sale, and, by direction of all the distributees, receipted for the proceeds and ordered deed made to this debtor in trust for his wife and children, the deed so made is not a fraud upon his (the debtor's) other creditors.
5. Findings of fact by the judge in a law case tried by him without a jury are not reviewable on appeal.

Before Fraser, J., Fairfield, September, 1883.

The opinion sufficiently states the case.

The Circuit decree was as follows:

This case was heard by me at the term of Court of Common Pleas for Fairfield County in September, 1883. The case was heard on the pleadings, and testimony taken in open court. * * * This action has been brought to set aside the trust deed to William J. Dawkins for fraud and for the possession of the land.

The note on which the confession of judgment in favor of J. T. Dawkins as administrator was founded was given for purchases at the sale of the personal estate of John Dawkins. The delay in obtaining a judgment on this note and in enforcing the collection of it is not at all unnatural in the condition of the country and the circumstances of this family, William J. Dawkins being the youngest brother. The evidence does not show any unfairness in the sale by the sheriff at which the land was bid off by

J. T. Dawkins, who for several years after the sale, but before the deed by the sheriff, received the rents to the exclusion of William J. Dawkins, and there is no evidence that the children of William J. Dawkins, who are the real beneficiaries under this deed, had any knowledge of these transactions.

I have not discovered in the evidence any actual intent to defraud creditors. The money was *bona fide* due to the estate of John Dawkins. The administrator proceeded in what seems to me a legitimate way to secure a first lien on the property of William J. Dawkins. When the property fell under their control by the sheriff's sale, the other distributees did what they had a right to do in having it conveyed to the children of William J. Dawkins. They were under no obligation to devote it to his creditors.

It is insisted, however, that even if there was no fraudulent intent, the fact that William J. Dawkins, the judgment debtor, had an interest in the judgment as one of the distributees of John Dawkins to the extent of one-eighth, and that to this extent his own money was a part of the consideration of the deed, and that by this the whole transaction is tainted with fraud and illegal. It will be remembered that the amount credited on this judgment and execution was only $178.40, while the amount remaining due and unpaid was over $900. No part of this $178.40 was payable to him until the full amount of the shares of the others was paid. If it is claimed that J. T. Dawkins held this title for the benefit of William J. Dawkins and other children of John Dawkins, there is nothing before me to show that the land at any time before the trust deed was made was worth any more than the amount bid for it at the sheriff's sale— $205. It is, therefore, mere conjecture that William J. Dawkins paid any portion of this bid, either directly or indirectly.

There are two classes of conveyances considered as fraudulent against creditors: 1st. Those in which there is *an intent to defraud.* 2d. Those in which there is a want of valuable consideration in whole or in part. The same principles govern, whether the conveyance is made by the debtor or by the sheriff, who sells as his agent. The very strongest case which can be made by the plaintiff in this action, and it is the one most strenuously insisted

on, is that this conveyance by the sheriff is void, because it is in part, at least, voluntary and without valuable consideration.

Instead of having a return of *nulla bona* to the execution, and then coming into this court, now a court of equity as common pleas, to have the deed set aside for fraud, the plaintiff in this case has been advised to pursue a different course—to have the land sold by the sheriff first and then come into court on this title, demanding that the other deed be set aside for fraud without any return of *nulla bona*, and that possession of the land should be adjudged to her. If this can be done, then the ministerial officer of this court can proceed to make a good title to land by a sale under the execution, when it is not competent for this court to order a sale until, by a return of *nulla bona*, it is legally ascertained that it requires the property embraced in the deed to respond to the demands of the creditors, until which time the rights of the grantee are unassailable. *Suber* v. *Chandler*, 18 *S. C.* 529.

There are cases in which parties have recovered judgments in the law courts for lands without it, which they claimed under deeds from the sheriff, in which the defendants failed to sustain a previous deed because it was tainted with fraud. In *Jones* v. *Crawford* (1 *McMull.*, 373), the deed was held to be void for actual or active fraud and *not bona fide*. In *Richardson* v. *Rhodus* (14 *Rich.*, 95), the deed was held fraudulent and void because voluntary and without consideration. It is still the common practice to proceed in cases of personal property in all respects as if the fraudulent conveyance had never been made.

The principles laid down in *Suber* v. *Chandler*, however, at least in case of voluntary deeds, cannot, in my view, be reconciled with the course pursued by the plaintiff in this case. If this deed should be held to be void because it was voluntary in consequence of William J. Dawkins' interest in the judgment against himself, if the return of *nulla bona* is necessary in cases of voluntary deeds, there is no good reason why it should not be necessary in cases of deeds not *bona fide*. It is held in that case that it is not the maturity of the debt or the commission or discovery of the fraud which gives the right of action, but the return of *nulla bona*.

In the case before the court there has been no right to commence an action, and I do not see how in this case the sheriff could give her a good title without any action at all. This condition of things may have existed in consequence of the separation of the courts, and that now, as both courts are united, there should be a uniform rule that in all cases of fraudulent sale of land parties should come into this court before any sale and call in creditors, and ask to have the alleged fraudulent deed set aside for their benefit. It may be that the necessities for the return of *nulla bona*, which is always after judgment, at the option of the creditor, puts the debtor and his grantee too much in his power, and gives the creditor the entire control of the statute of limitations; but I can only follow the cases as I find them, and apply the principles laid down.

It is therefore ordered and adjudged, that the complaint, so far as it seeks to have the deed of trust set aside, and a recovery of the possession of the land, be dismissed.

I have before me no copy of the trust deed, and am not willing to construe it so as to determine what interest William J. Dawkins took at the death of one of his children, or whether any partition can now be made. It is therefore ordered that the case be retained until parties can be heard at the next or some subsequent term of the court, as to the right of plaintiff to have a partition now, and as to how much her interest is under her deed from the sheriff, or William J. Dawkins' interest in the land, being an interest as heir of a deceased child. The parties to whom a portion of this land has been sold cannot be bound by any proceedings in this case until they are made parties. The administrator and other distributees of John Dawkins are neither necessary nor proper parties to this action. All questions of costs reserved for future order of court.

The plaintiff appealed on the following exceptions:

I. Because his honor did not find that the judgment of J. T. Dawkins, as administrator, against William J. Dawkins, was confessed by the defendant, in collusion with the plaintiff, for the purpose of hindering and delaying the creditors of said defendant, and that though the said debt has long since been paid, the said judgment has been kept open for the same purpose.

II. Because his honor did not find that the purchase by J. Thomas Dawkins at sheriff's sale in 1876 was merely colorable, and was solely for the benefit of the defendant, William J. Dawkins, and that the transfer of his bid and the causing of the deed to be made to the defendant, William J. Dawkins, in trust for his children, were for the purpose of hindering, delaying, and defrauding the creditors of said William J. Dawkins.

III. Because his honor did not find that the consideration for the said transfer of said bid moved in large part from the defendant, William J. Dawkins, and the same was a fraud, as matter of law, upon the creditors of said William J. Dawkins.

IV. Because his honor concluded that even if all of said transactions, or any of them, were had with intent to hinder and delay the creditors of said William J. Dawkins, the plaintiff could not cause the said land to be levied upon and sold under her execution at law.

V. Because his honor did not decree the said deed to be vacated and annulled as fraudulent and void as to the creditors of said William J. Dawkins.

*Mr. Wm. H. Lyles*, for appellant.

*Mr. Jno. S. Reynolds*, contra.

March 9, 1885. The opinion of the court was delivered by

Mr. Chief Justice Simpson. The plaintiff, appellant, recovered a judgment against the defendant, William J. Dawkins, in 1876, under which the land in dispute was sold in December, 1876. At this sale J. Thomas Dawkins became the purchaser at $205. Of this he paid $26 to the sheriff, we suppose to cover costs, and the balance, $179, he claimed should be credited on a judgment which he held against the said William J., which was allowed by the sheriff. This was a judgment by confession which Thomas J. Dawkins held as administrator of his father, John Dawkins, deceased, and based on a note which the said William J. had given in the purchase of certain property made at the sale of the estate in 1854. The confession was given 1869, and was for $854.22. On this confession was a credit of $185, and when

the balance of J. T. Dawkins' bid at the sale above referred to was allowed by the sheriff to be entered as a credit, *i. e.*, $179, there still remained due thereon over $900.

William J. Dawkins was a son of the intestate, John Dawkins, as was also J. T. Dawkins, and they, with other brothers and sisters, eight in all, including these two, were the distributees. Although the bid of J. T. Dawkins was credited on his judgment, he did not demand or obtain titles from the sheriff. He, however, took control and rented it out from year to year until January, 1880, when, by directions of the said J. T. Dawkins, the sheriff executed titles to the said William J. Dawkins in trust for his children then living, and such as should thereafter be born. This deed was made in this way by the consent and direction of the other distributees of the estate of John Dawkins, deceased, and we suppose was in satisfaction of their portion of the proceeds credited on the judgment held by J. T. Dawkins as administrator as above.

After the execution of this deed the plaintiff, in November, 1882, caused the land to be again sold under the same judgment, and with renewed execution, by which she had previously sold it. At this sale she became the purchaser at $5 and received a conveyance from the sheriff. She then commenced the action below, alleging in her complaint that the deed to W. J. Dawkins in trust for his children was intended to hinder and delay his creditors; that he was insolvent, and had been for years, and that he had no other property out of which the plaintiff could make her debt; that one of his children had died, and that he unjustly retained possession of the land against her conveyance from the sheriff, by virtue of which she was seized in fee and entitled to immediate possession. Wherefore she demanded judgment: 1st. That said pretended deed of the sheriff to said W. J. Dawkins be adjudged void; 2d. For the possession of the land; and, 3d., for such other and further relief as may seem just, with costs.

The case came to trial before his honor, Judge Fraser, who heard it upon the pleadings and evidence adduced, and finding no testimony showing a return of *nulla bona* on the execution of the plaintiff before she began her suit, which in his opinion was necessary under *Suber* v. *Chandler* (18 *S. C.*, 529), he dismissed

the complaint, both so far as it sought to have the deed of trust set aside, and also the recovery of the possession of the land. He, however, retained it until the parties could be heard at the next term of the court, as to the right of the plaintiff to have a partition as to the interest of W. J. Dawkins in the land, as heir of his deceased child, on the ground, we suppose, that this interest, if any, at least passed to the plaintiff under her deed from the sheriff.

The plaintiff has appealed, and she assigns error to the decree of his honor: 1st. Because he did not find the confession of judgment fraudulent, and long since paid. 2d. That he did not find the bid of J. T. Dawkins at sheriff's first sale colorable, and that its transfer, and causing the deed to be made to W. J. Dawkins in trust for his children, were to hinder, delay, and defraud his, W. J. Dawkins', creditors. 3d. Because he did not find that the consideration for said transfer of his bid and the execution of the deed were moved in large part from W. J. D., and was therefore fraudulent as matter of law upon his creditors.

The complaint contains two causes of action, the first to set aside a deed of land for fraud, and the second to recover possession of the land. The one is equitable and the other legal. This, however, is not objectionable under the reformed procedure. In fact, the union of these two actions in the same complaint has been especially recognized as proper pleading; because it not only prevents circuity of action, but affords prompt relief. But when they are thus combined they do not lose their distinctive features and characteristics, nor are the rules heretofore existing as to their trial changed or coalesced. On the contrary, what was equitable before still remains equitable, and what was legal is still legal, and the mode of trial of each is still preserved. These rules required in this case that the first cause of action should be tried by the judge, and the second by the jury, unless a jury trial was waived. We suppose the jury trial was waived, and the whole case, therefore, was properly heard by the judge.

We think the judge was right in holding as to the equity cause that the action could not be maintained in the absence of a *nulla bona* return on plaintiff's execution before commencing it. *Suber* v. *Chandler, supra.* It is a general rule, established and held

in many cases, that in actions by creditors in equity to vacate voluntary deeds and conveyances of their debtors, *inter vivos*, to entitle them to proceed, they must have first exhausted their legal remedies. That this is the only ground upon which they can come into equity, and while it is not necessary to allege in the complaint a return of *nulla bona*, yet that is the sufficient evidence of the fact that all legal remedies have been exhausted. It is, too, one of the probative facts which shows the necessity under which the plaintiff is to resort to the property covered by the deed which he seeks to set aside, and it is the foundation for the charge of legal fraud on account of which such deeds are frequently assailed. It must appear, therefore, in the evidence, or the action will fail. It was not proved in this case. The judge could not do otherwise then than dismiss the complaint as to the first cause of action.

But the failure of the first cause of action on this ground did not necessarily demand the dismissal of the second. That was an action at law for the recovery of the land, and the opposing deed of the defendant might have been resisted for fraud on the law side without the evidence of a *nulla bona* return. It has been the constant practice of the law courts in this state in actions to try titles to allow deeds and other conveyances to be assailed in evidence for fraud without such return. *Thomas & Ashly* v. *Jeter*, 1 *Hill*, 380; *Smith* v. *Culbertson*, 9 *Rich.*, 106. It is only required in equity courts, and it is required there because such courts can only take cognizance of such cases when the plaintiff has exhausted his legal remedies, of which fact such return is held to be the best and highest evidence. We do not know that the Circuit judge dismissed the complaint as to the second cause of action simply because there was a failure of evidence to sustain the first as to the *nulla bona* return. He seems to have heard the whole case, legal and equitable, the evidence for and against, all that the parties had, we suppose, was submitted and heard, and the judge may have dismissed the second cause because the charges of fraud made were not proved, and this part of the case being a case at law, though tried by the judge, the facts are beyond our reach; but if we could consider

them, we would have no hesitation in saying that there is no foundation for these charges.

There is no doubt that the defendant bought the property at the estate sale, for which he gave his note. He had a right to confess the judgment. The plaintiff herself forced the sale of his land, at which J. T. Dawkins purchased it. There was nothing wrong at the sale, no chilling of the bids, no concealment, nor anything out of the way. J. T. Dawkins had the right to have his bid credited on his judgment; in fact, it was his duty to see that the land should not go to others below its market value. He had the right to pay off the distributees in land, if they were willing to receive it in whole or in part of their shares in the personal estate, and those distributees, it seems to us, did a commendable act in surrendering their interest therein by directing the land to be conveyed for the benefit of the children of their unfortunate brother. To denounce such an act of benevolent charity as this fraudulent, and allow a party who purchased the land at $5 to recover it, would be shocking. There is no evidence that any portion of W. J. Dawkins' share in the personal estate went into this land. For aught that appears the administrator still owes him his share therein, and he still owes the administrator over $900 on the judgment. In the face of all this we cannot say that the Circuit judge erred in not holding as matter of law that the transaction was fraudulent, as assigned in exception 3.

The other two exceptions complain that the Circuit judge did not find certain matters of fact. As we have already said, the findings of facts were for him. It may be that on the death of W. J. Dawkins' child he became entitled to an interest in the land as one of the heirs of that child; if so, in all probability the plaintiff's deed would convey that interest; if so, it is her right to recover it, and the decree of the judge provides for this.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.

A petition for rehearing was filed March 19, but the same was dismissed by an order passed *Per Curiam* May 4, 1885.